## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE:       )  **Case No. 18-16544**

          )

  **George Peake,**   )  **Hon. Deborah Thorne**

          )  **Chapter 13**

  **Debtor.**     )

          )

## MEMORANDUM OPINION

### Introduction

The facts in this case are familiar to thousands of debtors appearing in this district attempting to regain possession of their cars and pay accrued parking and red-light tickets through chapter 13 plans. The issue is not only important to each of these debtors but also to the City of Chicago (City), which relies upon collection of parking and red-light ticket revenue to fund approximately 7% of the City's budget.[1]

George Peake (Mr. Peake or Debtor) owns a 2007 Lincoln MKZ vehicle (MKZ) with approximately 200,000 miles and valued by him at $4,310. GO Financial holds a first priority lien on the MKZ securing a debt in the amount of $7,312.79. After Mr. Peake, as owner of the MKZ, accrued several final determinations of liability for parking and automated red-light violations, the MKZ was immobilized and later impounded by the City of Chicago.[2] The

---

[1] *See* George Peake's Reply to the City of Chicago's Response to Motion, Docket No. 24, Exh. D, at 5 (Lauren Nolan, Woodstock Institute, "Enforcing Inequality: Balancing Budgets on the Backs of the Poor," June 2018) ("Tickets issued in 2016 brought in $264 million, which was seven percent of the City's operating budget.").

[2] Mr. Peake states that a certain number of tickets issued against him were issued based on the conduct of other people who were driving his MKZ. Whatever the merits of such a defense, as explained below, in order for the City to have booted his MKZ, it needed to have at least 2-3 final determinations of liability entered against him. Any defense Mr. Peake had to the entry of those final determinations could or should have been raised in the hearing(s) leading up to their entry.

immobilization took place on May 31, 2018, and, a day later, the City towed and impounded the MKZ.

Mr. Peake works at an Amazon facility in Joliet, Illinois, approximately 45 miles from his southside of Chicago residence and relies upon the MKZ to drive to and from work. Without his car, he has been forced to pay others to drive him to Joliet. Like so many others in this district, Mr. Peake chose on June 9 to file a chapter 13 petition in an attempt to pay his outstanding traffic violation fines through his plan. Mr. Peake alleges that the City would not release his MKZ unless he complied with one of two options proposed by the City: (1) wait until his plan was confirmed treating the City as a fully secured creditor with a 60-month plan, or (2) provide treatment for the City as a fully secured creditor in a 60-month plan and pay as much as $1,250 immediately for release of the MKZ. George Peake's Motion for Turnover, Docket No. 16, at 4, ¶¶ 13–14. Mr. Peake did not agree to or was unable to comply with the demand for immediate payment for the release of the MKZ. He has treated the City's claim in his proposed amended plan as secured in section 3.2. George Peake's Plan, Docket No. 31, at § 3.2. Through confirmation of his proposed plan Mr. Peake would be able to drive his MKZ and use his disposable income to make payments to the City as well as other creditors.

After trying and failing to obtain the release of his vehicle by notifying the City of his bankruptcy filing, Mr. Peake filed this motion to enforce the automatic stay and to compel the City to turn over the MKZ. The narrow question presented in this case is whether the City's retention of possession of a vehicle in which the Debtor has an ownership interest on the petition date violates the automatic stay, in particular section 362(a)(3).[3] Unless one of the automatic

---

[3] The Debtor raises in his reply brief, for the first time, a new legal argument under section 362(a)(6) of the Code. It is, however, well-established that new legal arguments may not be raised for the first time in a reply brief. *In re Meier*, 537 B.R. 880, 884 (Bankr. N.D. Ill. 2015), *aff'd sub nom. Bauch & Michaels,*

stay exceptions, namely section 362(b)(3) or (b)(4), applies, the City's conduct in retaining

possession of the vehicle violates section 362(a)(3) as that section has been interpreted by the

Seventh Circuit Court of Appeals in *Thompson v. General Motors Acceptance Corp.*, 566 F.3d

699 (7th Cir. 2009) (*Thompson*). There, the Seventh Circuit held that the act of passively

retaining an asset "constitutes exercising control over it, and such action violates section

362(a)(3) of the Bankruptcy Code." *Thompson*, 566 F.3d at 703.

For the reasons that follow, the court concludes that neither section 362(b)(3) nor section

362(b)(4) applies to the City's retention of the Debtor's vehicle in this case. The City, therefore,

has violated the automatic stay by refusing to return the Debtor's car, and it must release the

MKZ to the Debtor immediately.

## Discussion[4]

### I.    *Thompson*

The City first asks the court to decline to follow the Seventh Circuit's ruling in

*Thompson*, which held that, upon the request of a debtor in bankruptcy, a creditor must return the

debtor's vehicle to him even though the creditor was lawfully in possession of the vehicle at the

time of the petition, and that, after return of the vehicle, the creditor may seek an order of

adequate protection of its property interest in the bankruptcy court. *Thompson*, 566 F.3d at 703,

708. This court, of course, is not at liberty to decline to follow a decision of the Court of Appeals

for the circuit in which this court sits, at least unless subsequent events make it "almost certain"

---

*LLC v. Meier*, No. 15 CV 8812, 2016 WL 4611389 (N.D. Ill. Sept. 6, 2016); *see also Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989). The court will not therefore consider the Debtor's belated section 362(a)(6) argument.

[4] This court has jurisdiction to hear and finally determine this matter. *See* 28 U.S.C. §§ 1334(b), 157(a), 157(b)(2)(A); *In re Benalcazar*, 283 B.R. 514, 517 (Bankr. N.D. Ill. 2002). Since this proceeding, one to enforce the automatic stay, could not arise in the absence of a bankruptcy, this court has the constitutional authority to finally determine this matter. *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

that the Court of Appeals would repudiate its prior decision. *See Colby v. J.C. Penney Co.*, 811

F.2d 1119, 1123 (7th Cir. 1987); *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731,

734 (7th Cir. 1986); *United States v. Burke*, 781 F.2d 1234, 1239 n.2 (7th Cir. 1985); *F.D.I.C. v.*

*Mahajan*, 923 F. Supp. 2d 1133, 1139–40 (N.D. Ill. 2013). That certainty does not exist here,

despite the fact that a circuit split has recently been created on the issue addressed by the court in

*Thompson. See WD Equipment, LLC v. Cowen (In re Cowen)*, 849 F.3d 943 (10th Cir. 2017).

The City's request is therefore denied.

## II.    The City's Interest in Property

The City's primary argument is that it does not have a duty to turn over the Debtor's

vehicle pursuant to section 362(a) and *Thompson* because its act of continuing to retain

possession of the vehicle is an "act . . . to continue or maintain the perfection of [its] interest in

property . . . ." 11 U.S.C. § 362(b)(3). For this provision to apply, an "interest in property" must

exist as of the petition date. *In re 229 Main St. Ltd. P'ship*, 262 F.3d 1, 5 (1st Cir. 2001). The

Debtor argues in substance that the City has no interest in property because the City ordinances

giving it an interest in property are not valid exercises of the City's Home Rule authority.

Because the City's ordinance-scheme is a valid exercise of the express statutory authority

granted to it by the State of Illinois, and because that ordinance scheme in this case resulted in

the City having a possessory interest[5] in the Debtor's vehicle as of the date of the petition, the

Debtor's argument is rejected.[6]

---

[5] A possessory interest is defined as "[t]he present right to control property, including the right to exclude
others, by a person who is not necessarily the owner." *Possessory Interest*, BLACK'S LAW DICTIONARY
1353 (10th ed. 2014).

[6] Because the court concludes that the City's ordinances and the City's conduct acting pursuant thereto
gave it an interest in property as of the petition date, and because those ordinances are valid exercises of
the express statutory authority granted to the City by the State of Illinois, it does not need to reach the

## A. The City's Ordinances Provide the Mechanism for its Asserted Interest in Property

As the City notes, this case is a "boot and impound" case where the Debtor's vehicle was first immobilized and then towed to a City impound lot for accrued but unpaid parking and automated red-light violation tickets. The City first argues that its booting and impounding of the Debtor's vehicle is appropriate (1) under its ordinances and (2) under 625 ILCS § 5/11–208.2 *et seq.*, which is the portion of the Illinois Vehicle Code permitting municipalities like the City to administratively adjudicate "violations of traffic regulations concerning the standing, parking, or condition of vehicles, automated traffic law violations, and automated speed enforcement system violations." 625 ILCS § 5/11–208.3. Chicago's inherent Home Rule authority, while usually broad, has been explicitly curtailed in this area by the Illinois legislature, and the City may not implement ordinances that are inconsistent with the state statutory scheme. 625 ILCS § 5/11–208.2; *City of Chicago v. Roman*, 705 N.E.2d 81, 89 (Ill. 1998).

The statute provides:

> Any municipality or county may provide by ordinance for a system of administrative adjudication of vehicular standing and parking violations and vehicle compliance violations as described in this subsection, automated traffic law violations as defined in Section 11-208.6, 11-208.9, or 11-1201.1, and automated speed enforcement system violations as defined in Section 11-208.8.

625 ILCS § 5/11–208.3(a). The City has set up just such an administrative apparatus. *See* Municipal Code of Chicago (M.C.C.) § 9–100–010. The administrative scheme used by the City avoids the necessity of seeking adjudication in the state courts. *See, e.g., Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991) (noting the change from judicial to quasi-judicial administrative proceedings); *cf. Horn v. City of Chicago*, 860 F.2d 700, 700–01 (7th Cir. 1988)

---

separate question as to whether the City's ordinances could stand as an exercise of the City's inherent Home Rule authority granted to it by the Constitution of the State of Illinois.

(describing a parking ticket as being in part a notice of a complaint initiated in state court); *Stone St. Partners, LLC v. City of Chicago Dep't of Admin. Hearings*, 12 N.E.3d 691, 695 (Ill. App. Ct. 2014) (describing the change in the context of non-traffic municipal ordinance violations), *aff'd*, 88 N.E.3d 699 (Ill. 2017). The City's ordinances further provide that:

> The violation of any provision of the traffic code prohibiting or restricting vehicular standing or parking, or establishing a compliance, automated speed enforcement system, or automated traffic law enforcement system violation, shall be a civil offense punishable by fine, and no criminal penalty, or civil sanction other than that prescribed in the traffic code, shall be imposed.

M.C.C. § 9–100–020(a).

After being given notice of the violation, a vehicle owner is granted the opportunity to contest the violation either in person at a hearing or by way of mail correspondence. M.C.C. §§ 9–100–055, 070, 080. If the vehicle owner loses or otherwise does not contest the violation, a determination of liability is entered. M.C.C. § 9–100–090. At that point, the decision may be appealed under the Administrative Review Law of Illinois. *Id.*; 735 ILCS § 5/3–101 *et seq.*; *Van Harken v. City of Chicago*, 713 N.E.2d 754, 759 (Ill. App. Ct. 1999).

If administrative review of the decision is not sought or is not fruitful for the vehicle owner, the determination of liability becomes final. M.C.C. § 9–100–100. Once a determination of liability becomes final, the fine becomes a "debt due and owing the municipality . . . and, as such, may be collected in accordance with applicable law." 625 ILCS § 5/11–208.3(e).

From here, the City could commence a proceeding in the state circuit court to have the final determination turned into a formal money judgment. The role of the judge in such a proceeding is minimal. She may only verify whether the final determination of liability has been entered in accordance with the Illinois Vehicle Code and the applicable City ordinances. 625 ILCS § 5/11–208.3(f). If the judge is so satisfied, a money judgment is entered, which would

unlock all of the judicial collections procedures afforded by "applicable law." 625 ILCS § 5/11–208.3(f) ("The judgment shall have the same effect and may be enforced in the same manner as other judgments for the recovery of money.").[7]

Then, if the City wanted to take the judgment debtor's vehicle in satisfaction of its judgment debt, it could proceed either by way of supplementary proceedings or by way of normal execution process. *See* 735 ILCS §§ 5/2–1402(c)(1), (e), 5/12–111, 112, 158, 166. Under the former method, the court could order the judgment debtor to deliver up the vehicle to the sheriff to be sold in satisfaction of the City's judgment. 735 ILCS § 5/2–1402(c)(1), (e). Under the latter method, a copy of the judgment could be delivered to the sheriff who could then forcibly seize the judgment debtor's vehicle in order to sell it in satisfaction of the City's judgment. *See In re Marriage of Logston*, 469 N.E.2d 167, 172 (Ill. 1984) ("If the judgment goes unpaid, it may be enforced through the remedy of execution, whereby as much of the debtor's property may be taken and sold as is necessary to satisfy the obligation."); *see also* 735 ILCS § 5/2–1501 (noting that a copy of the judgment performs the function of the now obsolete writ of execution).

But the Illinois legislature has authorized municipalities to take a short-cut on the path to the effective enforcement of their final determinations of liability where those final

---

[7] In this respect, the administrative adjudication apparatus authorized for both Home Rule and non-Home Rule municipalities by the Illinois Vehicle Code differs slightly from that authorized for Home Rule municipalities by the Illinois Municipal Code in that the latter treats administratively adjudicated final determinations of liability as *money judgments in their own right*. 65 ILCS § 5/1–2.1–8(a)–(b); *Vill. of Lake in Hills v. Niklaus*, 11 N.E.3d 26, 33–34 (Ill. App. Ct. 2014); *Stone St. Partners*, 12 N.E.3d at 694 n.1. Though the City in this case does not cite Division 2.1 of the Illinois Municipal Code as a justification for its ordinance scheme, the City's ordinances themselves do (in addition to citing the Illinois Vehicle Code). M.C.C. § 9–100–010(a). Because the issue has not been raised or briefed, the court does not reach the question as to whether the City's administrative adjudication system is statutorily authorized by the Illinois Municipal Code in addition to the Illinois Vehicle Code.

determinations are for violations of ordinances concerned with standing, parking, and automated

traffic law violations. The legislature has provided that:

> [a]ny municipality or county establishing vehicular standing, parking, compliance,
> automated speed enforcement system, or automated traffic law regulations under
> this Section may also provide by ordinance for a program of vehicle immobilization
> for the purpose of facilitating enforcement of those regulations. The program of
> vehicle immobilization shall provide for immobilizing any eligible vehicle upon
> the public way by presence of a restraint in a manner to prevent operation of the
> vehicle.

625 ILCS § 5/11–208.3(c).

A vehicle is only eligible for immobilization where the registered owner has accumulated

a certain number of unpaid "final determinations of . . . liability," *see* 625 ILCS § 5/11–

208.3(c)(1),[8] and, as indicated above, a final determination of liability may only be entered

against the registered owner after the registered owner has contested or failed to contest the

City's charges in the administrative proceeding and exhausted or failed to exhaust the

opportunity for judicial review of the determination of liability entered in those proceedings, *see*

M.C.C. § 9–100–100; 625 ILCS § 5/11–208.3(b)(7). The number of final determinations

required before a vehicle is eligible for immobilization is determined by local ordinance. 625

ILCS § 5/11–208.3(c)(1). The City's ordinances set the number at two or three, the former

number being used only if the final determinations of liability have been outstanding for over a

year. M.C.C. § 9–100–120(b). Going back to the Illinois statute, the law provides for both

immobilization and towing/impoundment following an immobilization. 625 ILCS § 5/11–

208.3(c)(3), (4).

---

[8] The statute also discusses "incomplete traffic education programs," but the City's ordinances do not
appear to provide for the imposition of traffic education programs on vehicle owners as penalties for
violations, nor does this case concern any such programs.

Given the statute's express linkage with final determinations of liability, *see* 625 ILCS §

5/11–208.3(c)(1), it is clear that the State of Illinois has authorized municipalities like the City to

bypass the traditional panoply of collection remedies in a narrowly defined set of circumstances.

In essence, where the final determinations are for standing, parking, or automated traffic

ordinance violations, the City may act as sheriff on behalf of itself as victorious litigant

(judgment creditor) and forcibly levy on a vehicle owned by the person against whom the final

determinations have been entered. *Cf. Saukstelis*, 932 F.2d at 1172 (describing an earlier iteration

of the City's ordinances as a "form of pre-trial attachment"); *United States v. Whiting Pools,

Inc.*, 674 F.2d 144, 156 (2d Cir. 1982) (describing the IRS's statutory power to levy on tangible

property as largely indistinguishable from the ordinary judicial procedures used to obtain

possession of tangible property, "except for the fact that the IRS can make its own levy without

need of the assistance of a sheriff, marshal or similar officer"), *aff'd,* 462 U.S. 198 (1983).

The City's ordinances provide for such a result. After two or three unpaid final

determinations of liability remain outstanding, the City may immobilize the owner's vehicle by

placing a restraint on it. M.C.C. § 9–100–120(a)–(b). The restraint may only be released by

paying the full amount of the debt owed to the City (hereinafter referred to as the "judgment

debt"). M.C.C. § 9–100–120(d).[9] Once 24 hours have elapsed, the vehicle becomes eligible for

towing and impoundment. M.C.C. § 9–100–120(c); *see also Robledo v. City of Chicago*, 778 F.

Supp. 2d 887, 889 (N.D. Ill. 2011). Once impounded, the vehicle may only be released by paying

the judgment debt, any applicable collection costs as provided for by ordinance, and any

applicable towing and storage fees (plus ostensibly any unpaid immobilization fees). M.C.C. §

---

[9] Any immobilization fee must also be paid, as well as the City's costs of collecting the judgment debt, with collection costs being separately provided for in M.C.C. §§ 1–19–010 — 1–19–030.

9–92–080(a).[10] If no payment is forthcoming, the City may sell or dispose of the vehicle.

M.C.C. §§ 9–100–120(f), 9–92–100; *see also Robledo*, 778 F. Supp. 2d at 889–90.

Thus, the City, by its seizure, at once obtains (1) the possession of the vehicle, (2) the

right to retain the possession of the vehicle until the debt owed is paid, *see* M.C.C. §§ 9–100–

120(d), 9–92–080(a), and (3) the contingent right to sell or dispose of the vehicle if the debt

owed is not timely paid, *see* M.C.C. §§ 9–100–020(f), 9–92–100.

### B. The City's Interest in Property Considered

The City argues that these rights are really what gives it an "interest in property" under

section 362(b)(3), not necessarily the "possessory lien" language it later added to its

ordinances.[11] In evaluating this contention, the court notes that property interests are generally

created and defined by state law. *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Butner v.

United States*, 440 U.S. 48, 55 (1979).

"Property . . . is not the physical thing which may be the subject of ownership, but is the

right of dominion, possession, and power of disposition which may be acquired over it."

*Transcon. Oil Co. v. Emmerson*, 131 N.E. 645, 647 (Ill. 1921) (internal quotations and citations

omitted); *cf. United States v. Gen. Motors Corp.*, 323 U.S. 373, 377–78 (1945) (echoing this

---

[10] The one exception is that a lienholder claiming through a conditional sales agreement may obtain release by paying only the towing and storage fees. *See* M.C.C. § 9–92–080(c). A lienholder claiming through a conditional sales agreement very likely means a lienholder with a purchase money security interest. *Alger v. Davis*, 76 N.W.2d 847, 850 (Mich. 1956) (defining conditional sales agreement); 810 ILCS §§ 9-109(a)(5), 9–110, 2–401(1); *In re Mohawk Indus., Inc.*, 49 B.R. 376, 380 (Bankr. D. Mass. 1985); *Mayor's Jewelers of Ft. Lauderdale, Inc. v. Levinson*, 349 N.E.2d 475, 477 (Ill. App. Ct. 1976).
[11] The City, in 2016 and 2017, passed ordinances adding language expressly giving it a "possessory lien" on any vehicle immobilized/impounded up to the amount necessary to secure the vehicle's release. As indicated in the discussion below, it is unclear why the language was added, since the City, by the time of the immobilization or impoundment of a specific vehicle, already has a lawful right to possess the vehicle pending payment of the debt(s) owing to it, which is all that the label "possessory lien" denotes.

10

statement and noting that traditional property interest labels are merely shorthand terms for

certain groups of rights in things or objects/items of property). A right to immobilize is a right to

possess, and therefore an interest in property, since the act of placing a restraint on a vehicle and

immobilizing it is an outward act to assert dominion and control over the vehicle and to hinder

those who might otherwise be in possession from continuing or asserting their dominion and

control over the vehicle. *Cf. Windmiller v. Chapman*, 28 N.E. 979, 980 (Ill. 1891); *see also*

*Possession*, BLACK'S LAW DICTIONARY 1351 (10th ed. 2014).

By its ordinance, the City's right to immobilize a given vehicle accrues after (1) the

registered vehicle owner has had three final determinations of liability entered against him which

remain unpaid;[12] (2) a notice of impending immobilization is sent to the vehicle owner; (3)

twenty-one days elapse without the registered vehicle owner paying the outstanding

fines/penalties and with the registered vehicle owner failing to contest the City's right to

immobilize on the grounds that the registered vehicle owner has not had the requisite number of

final determinations issued against him; and (4) the vehicle is found located on City-owned

property or on the "public way." M.C.C. § 9–100–120(a)–(b). The City's right to possess

specific vehicles accrues under state law at this point in time, which would give it a possessory

interest in those vehicles at that moment. *See Transcon*, 131 N.E. at 647.

As far as section 362(b)(3) goes, the City's interest in property is created no earlier than

when it actually immobilizes a specific vehicle. This is due to the fact that, up to the point of the

restraint actually being placed on the vehicle, the City's right to place that restraint could be

"erased or altered" by the simple expedient of removing the vehicle from the "public way" or

---

[12] Or two if the determinations are over a year old.

from City-owned property. M.C.C. § 9–100–120(a); *In re Grede Foundries, Inc.*, 651 F.3d 786,

792–93 (7th Cir. 2011); *In re Parr Meadows Racing Ass'n, Inc.*, 880 F.2d 1540, 1548 (2d Cir.

1989). Thus, the City has no real and identifiable interest in any specific vehicle, and therefore

no interest in property under section 362(b)(3), until it actually effectuates an immobilization of

that specific vehicle.[13]

In this case the City had already immobilized and impounded Mr. Peake's MKZ by the

time his petition was filed. The City had, as of the commencement of this case, (1) the possession

of the Debtor's vehicle and (2) the right to possess the Debtor's vehicle, at least until the debt(s)

owed to it have been paid.[14] Considered in the aggregate, these boil down to the City's lawful

right to *retain* the possession of the vehicle until the debt(s) owed to it by the Debtor have been

paid. That right constitutes its interest in the property, and this interest in property would likely

be considered a lien under Illinois law, *see In re Avila*, 566 B.R. 558, 560–61 (Bankr. N.D. Ill.

2017); *Gaskill v. Robert E. Sanders Disposal Hauling*, 619 N.E.2d 235, 238 (Ill. App. Ct. 1993),

a lien analogous to the bare common law lien on chattels, *see Knapp, Stout & Co. Co. v.

McCaffrey*, 177 U.S. 638, 645 (1900); *Ex parte Foster*, 9 F. Cas. 508, 513 (C.C.D. Mass. 1842)

(No. 4,960) ("A lien is a right in one man to retain that which is in his possession, belonging to

---

[13] The idea that no specific property interest in any specific vehicle exists until a restraint is placed on the
vehicle is somewhat analogous to early holdings and statements of the Illinois Supreme Court that a
sheriff or other judicial officer has no property interest in specific chattels capable of supporting a
possessory action until a levy on those chattels is actually made. *Mulheisen v. Lane*, 82 Ill. 117, 118–19
(1876); *Broadwell v. Paradice*, 81 Ill. 474, 475 (1876); *Frink v. Pratt*, 22 N.E. 819, 820 (Ill. 1889).
[14] After a period of time in possession of the vehicle, the City also accrues the separate "power [to
dispose]" of the vehicle. *Transcon*, 131 N.E. at 647; M.C.C. §§ 9–100–120(f), 9–92–100; 625 ILCS §
5/4–208(a). That period of time did not run prior to the bankruptcy petition being filed, *see* City's
Response, Docket No. 19, at 2, so this is not an issue in this case. The court will therefore confine its
analysis to the City's right to retain the possession of the vehicle pending payment of the debt(s) owed to
it by the Debtor.

another, till certain demands of him, the person in possession, are satisfied.") (quoting

*Hammonds v. Barclay*, 102 Eng. Rep. 356, 359 (K.B. 1802)).

The analogy to the common law possessory lien breaks down only when one considers

the forceful and nonconsensual manner in which the City first actually obtained the possession of

the vehicle in this case, since the common law possessory lien ordinarily gives one the right to

detain chattels that had initially been delivered *voluntarily* into one's possession. *See* JOSEPH J.

DARLING, A TREATISE ON THE LAW OF PERSONAL PROPERTY 44–51 (1891). When considering

the manner in which the City's possession, and thus its resulting possessory interest in property,

was first obtained, a comparison to liens obtained by way of nonconsensual levy is more apt. *See*

*In re Ohakpo*, 494 B.R. 269, 278 (Bankr. E.D. Mich. 2013) (noting that, under Michigan law, a

levy under a writ of execution creates a "possessory lien": "[T]he lien in such circumstances

arises upon the taking of possession of the judgment debtor's property. It is a possessory lien

attaching to the seized personal property to pay the judgment debt."); 1 WILLIAM HOUSTON

BROWN & LAWRENCE R. AHERN III, THE LAW OF DEBTORS AND CREDITORS § 6:53 (2018)

(noting the existence of jurisdictions where a levy on personal property creates a lien).

No matter the precise characterization of the City's interest under state and local law,[15]

the City's interest in the MKZ at the time of the petition was an "interest in property" under

section 362(b)(3) because, by the time the vehicle had been immobilized and impounded, the

only way to lawfully defeat the City's possessory interest was to pay the amounts required to

release the vehicle. That is, the City's interest in the MKZ at the time of the petition was real and

identifiable and could not be erased or altered by subsequent events. *Grede Foundries, Inc.*, 651

---

[15] Though that characterization is relevant to the discussion below regarding the continued existence and
perfection of the interest.

F.3d at 792–93; *Parr Meadows Racing Ass'n, Inc.*, 880 F.2d at 1548.[16] The City's possessory

interest in the MKZ was, therefore, an "interest in property" under section 362(b)(3) at the time

of the petition. *Grede Foundries, Inc.*, 651 F.3d at 792–93.[17]

The Debtor's contention that the City does not have a lien or other interest in property

under state law is therefore rejected. The City has the authority, by express state statute as

effectuated by its ordinances, to immobilize and impound a vehicle where there are more than

two or three final determinations of liability outstanding against the vehicle owner. This is what

happened in this case. The City's right to retain the possession of the Debtor's MKZ pending

payment of the debt(s) owed to it is an interest in property under state law analogous to a

common law possessory lien where the possession has, in the first instance, been obtained in a

manner akin to a levy made pursuant to a writ of execution. This interest may in some instances

be referred to as a lien in the discussion below, since it is an interest at least in the nature of a

lien. With this interest defined, the court now turns to the relevant provisions of the Bankruptcy

Code.[18]

---

[16] To be sure, the City's interest could be defeated by paying the amounts necessary to obtain the release of the vehicle, but that is a subsequent event that is built in to the very definition of the City's interest in the vehicle.

[17] To say that the City had a possessory interest under state law means that it had a right to the possession of the vehicle as of the petition date, which is a property interst existing on the petition date supporting the application of section 362(b)(3). *See 229 Main St.* 262 F.3d at 5 (noting that the application of section 362(b)(3) requires an interest in property to exist as of the petition date). As discussed below, if one of the section 362(b) exceptions does not apply, then the automatic stay, in tandem with other provisions, suspends the right to immediate possession that otherwise exists in favor of the City under state law on the petition date and draws that right back to the estate even though the City's interest in the vehicle persists.

[18] The Debtor also argues that the City's ordinances are preempted by the Bankruptcy Code. This argument was earlier rejected by the District Court. *Baines v. City of Chicago*, 584 B.R. 723 (N.D. Ill. 2018). The court agrees with the analysis therein. The Debtor's argument on this point is therefore rejected.

### III.   Section 362(b)(3)

Section 362(b) provides exceptions to the automatic stay.  The City argues that if it falls

within the exception in section 362(b)(3), it may continue its possession of the MKZ to maintain

and continue both its interest in the impounded MKZ and the perfection of that interest. The City

argues that it does fall within the exception because its continued possession of the MKZ is an

act to continue or maintain the perfection of its interest in the MKZ. Section 362(b)(3) provides:

> The filing of a petition . . . does not operate as a stay— under subsection (a) of this
> section, of any act to perfect, or to maintain or continue the perfection of, an interest
> in property to the extent that the trustee's rights and powers are subject to such
> perfection under section 546(b) of this title or to the extent that such act is
> accomplished within the period provided under section 547(e)(2)(A) of this title;

11 U.S.C. § 362(b)(3).

### A.  "Perfection"

Perfect or perfection is not defined in the Bankruptcy Code, but an interest in property is

perfected when it attains effectiveness or durability against third-party interest-takers or interest-

holders in the same item of property. *See generally In re Bates*, 270 B.R. 455, 468 (Bankr. N.D.

Ill. 2001); *Perfection*, BLACK'S LAW DICTIONARY 1318 (10th ed. 2014); *see also Matter of*

*Freedom Grp., Inc.*, 50 F.3d 408, 411 (7th Cir. 1995). The City's right to possess the vehicle is

perfected as long as the City retains possession because it may demand the amounts owing to it

under its ordinances in exchange for giving up its right to possession, and, importantly, it may

enforce its right to possess, by demanding the amounts owing to it, against *any* holder of an

interest in the vehicle. M.C.C. § 9–92–080(a), (c).[19] Thus, the City's continued retention of

possession maintains or continues the perfection of its interest in the vehicle. 11 U.S.C. §§

---

[19] As indicated above in note 10, if the interest-holder is claiming its interest through a conditional sales
agreement, the amount that the City can demand under its ordinances is reduced.

362(b)(3), 546(b)(1)(B); *In re Hayden*, 308 B.R. 428, 432 (B.A.P. 9th Cir. 2004); *In re Boggan*, 251 B.R. 95, 99–100 (B.A.P. 9th Cir. 2000).

The Debtor argues that the City's right to possess the vehicle is not destroyed if the City loses possession under certain circumstances. The Debtor is correct. The City's right to possess the vehicle continues where the loss of possession occurs under circumstances not indicating an intent to abandon, release, or waive the lien, such as where possession is given up involuntarily due to forced compliance with a statute or court order, where possession is given up under circumstances indicating an implied agreement to continue the lien, or where possession is given up by way of trick, fraud, artifice, or mistake. *See In re Borden*, 361 B.R. 489, 494–95 (B.A.P. 8th Cir. 2007); *In re Burke*, 5 B.R. 368, 371 (Bankr. E.D. Pa. 1980); *Gen. Motors Acceptance Corp. v. Colwell Diesel Serv. & Garage, Inc.*, 302 A.2d 595, 596–97 (Me. 1973); *Brauer v. Hotel Assocs., Inc.*, 192 A.2d 831, 835 (N.J. 1963); *State v. Dyer*, 259 P. 212, 216 (Okla. 1927); *In re Estate of Miller*, 556 N.E.2d 568, 572 (Ill. App. Ct. 1990); *Braden v. Cline*, 196 P. 913, 914 (Cal. Ct. App. 1921) ("The important fact is that he *voluntarily* relinquished possession and control of the property, by reason of which the *lien due to the levy of the writ was lost . . . .*") (emphasis added); *In re Atlas Iron Const. Co.*, 46 N.Y.S. 467, 469 (App. Div. 1897); 17 RULING CASE LAW 611–12 (William M. McKinney & Burdett A. Rich eds., 1917); 19 THE AMERICAN AND ENGLISH ENCYCLOPEDIA OF LAW 27 & n.10 (David S. Garland & Lucius P. McGehee eds., 2d ed. 1901); BASIL MONTAGU, A SUMMARY OF THE LAW OF LIEN 9–10 (1821); *see also Manufacturers' & Traders' Nat. Bank of Buffalo v. Gilman*, 7 F.2d 94, 97 (1st Cir. 1925); *Underground Elec. Rys. Co. of London v. Owsley*, 176 F. 26, 38 (2d Cir. 1909); *Wiswall v. Sampson*, 55 U.S. 52, 65 (1852); Eugene R. Wedoff, *The Automatic Stay Under § 362(a)(3)— One More Time*, 38 No. 7 Bankruptcy Law Letter NL 1 (July 2018) (discussing the Restatement

of Security's general rule that an interest is not lost where the possession is given up

involuntarily); *cf. Wilson v Kymer*, 105 Eng. Rep. 59, 61 (K.B. 1813) ("I should hold that if

goods are taken out of the hands of the party by operation of law, he shall not be prejudiced by it,

but the law will retain his lien for him."); *Ward v. Felton*, 102 Eng. Rep. 195, 197 (K.B. 1801).

That is, the right to possession of the item of property remains with the lienor despite the lienor's

having been forced to give up actual possession of the item.[20]

The Debtor's argument only proves the point that the City's interest requires possession

to remain perfected. Why? If the City were to lose actual possession where its right to possession

remained intact,[21] it would not be able to enforce its right to possession against all interest-takers

---

[20] Where the possession is lost involuntarily due to the commencement of a bankruptcy proceeding, due to which the lienor is forced to comply with the Bankruptcy Code, this result comports with the fundamental notion that interests in property existing on the petition date are not destroyed unless they are positively avoided, ruled upon negatively by the court in the application of a Code provision such as section 506, or otherwise detrimentally treated in the debtor's plan of reorganization. *See, e.g., Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991); *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 738 (1931); *Zartman v. First Nat. Bank of Waterloo*, 216 U.S. 134, 135 (1910); *Yeatman v. New Orleans Sav. Inst.*, 95 U.S. 764, 766–67 (1877); *Matter of Penrod*, 50 F.3d 459, 462–64 (7th Cir. 1995); *Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir. 1990); *Lockhart v. Garden City Bank & Tr. Co.*, 116 F.2d 658, 661 (2d Cir. 1940); *In re Toms*, 101 F.2d 617, 619 (6th Cir. 1939). Turning the vehicle over due to the operation of the automatic stay does not require a court ruling on the validity of the City's interest in property, nor is the automatic stay a positive avoidance provision, such as those provisions found in chapter 5 of the Code. Neither is the automatic stay a provision of the Code delineating the legal effect of a reorganization plan.

[21] In a bankruptcy proceeding where the possessory lienor has to give up possession due to the operation of the automatic stay (see below on why neither section 362(b)(3) nor (b)(4) applies to the City's conduct in this case), the right to *immediate* possession that might otherwise continue to exist in a non-bankruptcy context is held in abeyance until the stay is lifted or the bankruptcy proceedings otherwise cease. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988) (noting that a secured party's right to immediate possession under state law is "suspended by the stay"); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206 (1983) (noting that "bankruptcy law . . . modifies the procedural rights available to creditors to protect and satisfy their liens"); *Thompson*, 566 F.3d at 703–04 (noting that various provisions of the Bankruptcy Code work in tandem with the automatic stay to draw back into the estate the right to the immediate possession of an item of property); *In re DiGregorio*, 458 B.R. 436, 443–44 (Bankr. N.D. Ill. 2011) (discussing *Thompson*). The ultimate right to possession remains in the lienor, and that right may be asserted following the lifting of the stay or the dismissal of the bankruptcy proceedings. The lienor's ultimate right to possession may, of course, be defeated in the mean-time by full payment of the debt(s) secured by the right, or by the avoidance, invalidation, or modification of the interest, or its transfer or fixing, during the bankruptcy proceedings. *See, e.g.*, 11 U.S.C. §§ 522(f)(1),

in the vehicle. In particular, future creditors extending credit at the time that the City is out of

possession would obtain an execution lien superior to the City's interest if they had no actual

notice of the City's interest at the time they became creditors. *See* RESTATEMENT (FIRST) OF THE

LAW OF SECURITY § 80(3)–(4), cmt. d (1941); *Yellow Mfg. Acceptance Corp. v. Bristol*, 236 P.2d

939, 946–47 (Or. 1951); *Rehm v. Viall*, 185 Ill. App. 425, 426 (1914) (abstract); *Nw. Bank v.*

*Mckee Family Farms, Inc.*, No. 3:15-CV-01576-MO, 2016 WL 2841205, at *3 (D. Or. May 12,

2016); *cf. Century Pipe & Supply Co. v. Empire Factors Corp.*, 153 N.E.2d 298, 301–02 (Ill.

App. Ct. 1958) (discussing the importance of possession to the durability of an execution lien as

against third-parties; noting that "[a]ny act of a creditor diverting an execution from its purpose

renders it *inoperative against other creditors and clothes them with priority* . . . The act of

levying is the *effective method of notice to all* that the personal property is subject to a claim

secured by a lien") (emphasis added); *Havely v. Lowry*, 30 Ill. 446, 451 (1863) ("He made no

change of its possession, by placing a custodian over it, or removing it from the premises. It was

at most a mere pen and ink levy, and was wholly insufficient to affect the rights of third

persons."); *Conn v. Caldwell*, 6 Ill. 531, 536–37 (1844) (noting that third parties might take free

of an execution lien where the property is allowed to remain in the hands of the judgment debtor

even though the lien might continue to subsist as between the sheriff and the judgment debtor).

What this means is that the execution lienor could defeat the City's right to possession *without*

paying the sums due to the City under its ordinances. For that reason, the City could not enforce

its right to possession against that lienor. Thus, instead of being able to enforce its right to

possession against *all* interest-takers, as it may while in possession, there would exist one class

of interest-takers against which the City's right to possession would lose effectiveness if the City

---

547(b), 1322(b)(2); *In re Brinson*, 485 B.R. 890, 900–02 (Bankr. N.D. Ill. 2013) (discussing section
1322(b)(2)); *In re Ginther*, 427 B.R. 450, 453–54 (Bankr. N.D. Ill. 2010) (discussing section 1322(b)(2)).

were to lose possession. And for that reason, the City's lien becomes unperfected when it loses possession, even if the lien lives on.

Thus, possession is an implied, if not express, perfection requirement for the City's interest, and this is not changed by the fact that there are circumstances under which the City's lien would survive a loss of possession, at least as against the owner of the impounded vehicle. *See Hayden*, 308 B.R at 434 ("[A]lthough not specifically stated in the statute, possession is necessary for the lien to retain its priority, especially where the statute provides that the vehicle 'may not be released' until the applicable towing and storage costs are paid."). The City's continued retention of possession thus "continues or maintains" the perfection of its interest.

With that being said, the court turns to the purposes behind section 362(b)(3). Then, the court explains why the City's continued maintenance of the perfection of its interest is not an *act* to continue or maintain the perfection of that interest within the meaning of section 362(b)(3).

## B. The Purposes of Section 362(b)(3)

Section 362(b)(3) has two purposes. First, section 362(b)(3) protects lienors or interest holders from the danger of non-perfection following the dismissal or closure of a bankruptcy case. If, for example, a financing statement lapses during the pendency of the bankruptcy case, a lienor's lien might remain perfected during the bankruptcy. *See In re Paul*, 67 B.R. 342, 347 (Bankr. D. Mass. 1986) (noting that an interest perfected as of the date of the petition remains perfected by the vesting of all of the debtor's property in the bankruptcy estate); *Commercial Credit Bus. Loans, Inc. v. Northbrook Lumber Co.*, 22 B.R. 992, 995–96 (N.D. Ill. 1982) (applying this rationale in a case under chapter 11 where the debtor, not a trustee, remained in possession of property of the estate). But unless a new financing/continuation statement is filed

or some other act to perfect is taken the *very day* that the bankruptcy case is dismissed, the lienor runs the risk of having its lien subordinated or eliminated as against a subsequent interest-taker during the time period between dismissal of the bankruptcy case and the time that he files a new financing statement or otherwise perfects the interest. *See* 810 ILCS §§ 5/9–308(a), 5/9–310(a), 5/9–515; *In re Wilkinson*, No. 10-62223, 2012 WL 1192780, at *4 (Bankr. N.D.N.Y. Apr. 10, 2012) ("Secured creditors are now permitted—but not required to—file continuation statements notwithstanding the pendency of a bankruptcy proceeding. In this Court's view, a secured creditor who fails to file a post-petition continuation statement is protected within the bankruptcy proceeding but accepts the risk that the debtor's bankruptcy proceeding may fail, thus leaving them to contend with competing parties under the [U.C.C.] in the aftermath of an unsuccessful bankruptcy proceeding."). Section 362(b)(3) therefore allows the lienor to protect itself from that post-bankruptcy contingency during the pendency of the bankruptcy case. *See Wilkinson*, 2012 WL 1192790, at *4.

Second, section 362(b)(3) protects lienors or interest holders who have no *perfected* lien or interest in property at the time of the bankruptcy petition but who have the ability to take an act to perfect and have that act of perfection relate back to a time prior to the commencement of the bankruptcy case, usually the date of the creation of the interest in property. *In re Grede Foundries, Inc.*, 651 F.3d 786, 791 (7th Cir. 2011); *see also* 625 ILCS § 5/3–202(b) (allowing a 30-day relation-back period whereby the date of perfection is deemed to have occurred when the interest in property was created). Indeed, this latter situation has been described as "[t]he narrow purpose of section 362(b)(3)." *Grede Foundries*, 651 F.3d at 791.[22]

---

[22] That the other purpose for the exception was not mentioned in *Grede* might be explainable by the fact that the court relied on two pre-1994 opinions from the Second and Third Circuit Courts of Appeals for its explanation of purpose. *See Grede Foundries*, 651 F.3d at 791 (citing *In re Parr Meadows Racing*

Thus, there are two distinct situations addressed by section 362(b)(3). The first is where a lienor or interest holder has a perfected interest in property as of the date of the bankruptcy petition and wishes to continue his perfection under *nonbankruptcy law* during the pendency of the bankruptcy case notwithstanding his continued perfection under bankruptcy law during the pendency of the bankruptcy case. This gives effect to the "act . . . to maintain or continue the perfection of . . ." language of the subsection. *See* 11 U.S.C. § 362(b)(3). The second is the situation where a lienor or interest holder has an interest in property that is not perfected as of the date of the bankruptcy petition but who may, under nonbankruptcy law, take acts necessary for the perfection of its lien and have that date of perfection relate back to a time prior to the commencement of the bankruptcy petition, usually the date of the creation of the interest in property. The "act to perfect" language of the subsection applies in this situation. *See id.*

The City's interest would fit the first purpose if the City's argument were accepted. It had a perfected interest in property as of the petition date and it wishes to continue or maintain the perfection of that interest by retaining its possession of the property. The Debtor argues, however, that the City's passive retention of the vehicle is not an act to continue or maintain the perfection of its interest in the vehicle because section 362(b)(3) contemplates a definite, positive act to continue or maintain perfection, such as filing a continuation statement under the Uniform Commercial Code. The City counters that the language in section 362(b)(3) is broad enough to cover its continued retention of possession and that a ruling to the contrary would be inconsistent

---

*Ass'n, Inc.*, 880 F.2d 1540, 1546 (2d Cir. 1989); *Makoroff v. City of Lockport, N.Y.*, 916 F.2d 890, 891–92 (3d Cir. 1990)). The subsection was amended in 1994 to add the phrase "or to maintain or to continue the perfection of," which is the phrase that implicates the other purpose for the exception. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.LH[4][e] (Alan N. Resnick and Henry Sommers eds., 3d ed. 2018); *In re Doolan*, 447 B.R. 51, 60 n.7 (Bankr. D.N.H. 2011).

with *Thompson*, which held that the passive retention of property constituted an "act . . . to exercise control" over that property under section 362(a)(3). *Thompson*, 566 F.3d at 703.

### C. The Meaning of the Phrase "act . . . to continue or maintain the perfection of . . . ."

The plain meaning of section 362(b)(3), which refers to and must be read in conjunction with section 546(b), requires that an act to continue or maintain the perfection of an interest in property be a definite, positive act, such as filing a continuation statement under the Uniform Commercial Code.[23] When interpreting statutes, courts strive to give effect to the plain meaning of the statutory text. *Patterson v. Shumate*, 504 U.S. 753, 760 (1992); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). In searching for the plain meaning of a statute, every clause and word must be given effect; the court must consider not only the bare meaning of words in isolation, but also their "placement and purpose in the statutory scheme." *Khan v. United States*, 548 F.3d 549, 554 (7th Cir. 2008).

### i.    The Plain Meaning of the Phrase "act . . . to continue or maintain the perfection of . . . ."

The focus naturally turns first to the word "act" in the subsection. The term "act" is ordinarily defined in at least two ways. *See Clark v. Rameker*, 134 S. Ct. 2242, 2246 (2014) (looking to a dictionary when giving a term its ordinary meaning). First, it is the "doing of a thing," a "deed."[24] This definition tends to encompass positive, definite acts, which is in accord with the Debtor's argument. But the term is also defined as "the process of doing something,"

---

[23] The court thus agrees with that part of the decision in *In re Fulton* stating that the passive retention of property does not amount to an *act* to continue or maintain the perfection of an interest in property. *In re Fulton*, No. 18 BK 02860, 2018 WL 2570109, at *5 (Bankr. N.D. Ill. May 31, 2018).

[24] *See Act*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/act (last visited July 17, 2018).

which covers continuing actions, such as the City's retention of possession following its initial taking of possession.[25]

The term, of course, must be placed in its wider context, including the real-world situations to which the language pertains. *Matter of Handy Andy Home Improvement Centers, Inc.*, 144 F.3d 1125, 1128 (7th Cir. 1998). The addition of the words "maintain or continue the perfection of" in the subsection does not support either definition, however. Perfection may be maintained or continued solely by taking a single positive, definite, act, such as filing a continuation statement under the U.C.C. *See, e.g.*, 810 ILCS §§ 5/9–308(a), 5/9–310(a), 5/9–515. On the other hand, the continuing process of retaining possession also maintains or continues the perfection of an interest in property. Here, for example, the City's maintaining possession continues the perfection of its interest, since it may demand the sums of money defined in its ordinances in exchange for its right of possession, and, importantly, it may do this unequivocally as against *all* interest-takers in the vehicle, prior or future. *See supra* Part III.A.

The meaning of section 362(b)(3)'s "act . . . to continue or maintain the perfection of . . ." language becomes plain, however, when considered in the context of section 546(b), which is expressly referred to in section 362(b)(3). *See Khan*, 548 F.3d at 554. Section 362(b)(3) only excepts an act to continue or maintain the perfection of an interest in property where "the trustee's rights and powers are subject to such perfection under section 546(b) . . . ." *See* 11 U.S.C. § 362(b)(3). The trustee's rights and powers are subject to any generally applicable law that

---

[25] *Id.*

23

provides for the maintenance or continuation of perfection of an interest in property
to be effective against an entity that acquires rights in such property before the *date
on which action is taken* to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1)(B) (emphasis added). A "date" is defined as the "time at which an event

occurs."[26] This is the only definition of the term that makes sense in context, because the

remainder of the statutory phrase, namely, "on which action is taken" plainly contemplates the

occurrence of an event, namely, the taking of an action. *See* 11 U.S.C. § 546(b)(1)(B) ("on which

action is taken").

The term "act" in section 362(b)(3), therefore, must be referencing a single, positive,

definite act, such as the filing of a continuation statement. If this is not true, and the City's

continued retention of possession is an "act" to continue or maintain the perfection of its interest,

there is no sensible way to apply the language of section 546(b)(1)(B) as that language appears

on the face of the provision, because the time at which the City's "action is taken" is constantly

updating, second by second, as long as it retains the possession of the property in which it claims

an interest, and there is therefore no actual "date" on which action is taken to effect the

maintenance or continuation of the perfection of its interest in property. There is, instead of a

date, a never-ending passage of time.

The City's argument is also difficult to square with that part of section 362(b)(3)

referencing section 547(e)(2)(A), which reads "to the extent *such act is accomplished within the

period* provided under section 547(e)(2)(A) of this title." 11 U.S.C. § 362(b)(3). That language,

as it appears on the face of the provision, plainly contemplates an action being accomplished

within a definite time period. According to the City's argument, its "act" to continue or maintain

---

[26] *See Date*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/date (last visited Aug. 1,
2018).

the perfection of its interest would by definition never be accomplished for as long as it retained

possession. Thus, again, the statutory scheme points to a single, definite, positive act, namely one

that occurs at a definite time and that may be sensibly tested as having fallen either within or

without the 30-day period provided for in section 547(e)(2)(A).

In sum, therefore, the court concludes that the plain meaning of section 362(b)(3)

requires that an act to continue or maintain the perfection of an interest in property be a definite,

positive act, such as filing a continuation statement under the Uniform Commercial Code. Even

if the court were to apply canons of statutory construction or consult legislative history, however,

the result would be the same.

ii.     **The Automatic Stay's Exceptions are Construed Narrowly to Further the
        Automatic Stay's Purposes**

The automatic stay is one of the fundamental debtor protections provided by the

Bankruptcy Code. *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503

(1986). One of the main purposes of the automatic stay is to give the debtor a breathing spell

from his creditors and to allow him to attempt a repayment or reorganization plan. *In re

Ionosphere Clubs, Inc.*, 111 B.R. 423, 430 (Bankr. S.D.N.Y. 1990) (quoting H.R. Rep. No. 595,

95th Cong., 1st Sess. 340 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 49 (1978), *reprinted in*

1978 U.S. Code Cong. & Ad. News 5787, 5963, 6296–97). The automatic stay is broadly

construed to effectuate its purposes. *Grede Foundries*, 651 F.3d at 790; *Vill. of San Jose v.

McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002) ("We construe the Bankruptcy Code liberally in

favor of the debtor and strictly against the creditor.") (internal quotation marks omitted); *see also

Zedan v. Habash*, 529 F.3d 398, 406 (7th Cir. 2008).

Conversely, the automatic stay's exceptions are narrowly construed in order to secure the broad grant of relief provided by the automatic stay to the debtor. *Grede Foundries*, 651 F.3d at 790 ("Courts interpret these exceptions narrowly to give the automatic stay its intended broad application."); *In re Stringer*, 847 F.2d 549, 552 (9th Cir. 1988) ("Congress clearly intended the automatic stay to be quite broad. Exemptions to the stay, on the other hand, should be read narrowly to secure the broad grant of relief to the debtor.").

It is, therefore, natural to give the word "act" as used in section 362(b)(3) its narrower dictionary meaning and to read the phrase "act . . . to continue or maintain the perfection of . . ." to encompass only definite, positive acts to continue or maintain the perfection of an interest in property. Doing so secures "the broad grant of relief to the debtor," *Stringer*, 847 F.2d at 552, by enabling the debtor to take full advantage of section 362(a)'s protections regardless of the possessory or nonpossessory nature of a given creditor's interest in property, and regardless of the particular method by which that creditor has chosen to perfect its interest in property, and to therefore more speedily and effectively secure the goal of a successful rehabilitation, where all creditors benefit. *Cf. In re Philadelphia & Reading Coal & Iron Co.*, 117 F.2d 976, 978 (3d Cir. 1941) (noting that the debtor's opportunity to reorganize and the "effective administration" of the relevant bankruptcy law should not depend on legal distinctions between pledgees and mortgagees nor between real and personal property); *see also Thompson*, 566 F.3d at 702 ("The primary goal of reorganization bankruptcy is to group *all* of the debtor's property together . . . . An asset actively used by a debtor serves a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot.").

Giving the term its narrower meaning does not have an impact on the other primary purpose of the automatic stay, namely protecting creditors from one another and deterring a race

26

to the courthouse in the run-up to and during a debtor's bankruptcy proceeding. *Ionosphere Clubs*, 111 B.R. at 430 (discussing this other purpose). As discussed above, it is only *after* dismissal of the bankruptcy case that this narrower reading could incentivize the City to act to repossess the vehicle that had been impounded on the petition date and re-instate the perfection of its specific possessory interest in the vehicle to the extent that that interest rode through the bankruptcy unaffected. *See, e.g., Wilkinson*, 2012 WL 1192790, at *4; *see also supra* Parts III.A–B (discussing the continued existence of the City's interest in property despite that interest's loss of perfection under nonbankruptcy law; also discussing the period of time following the dismissal of a bankruptcy case where the City's interest in the vehicle would be vulnerable to a later interest-taker in the vehicle).

### iii.    Legislative History

This interpretation is supported by the legislative history surrounding the 1994 amendment to section 362(b)(3):

> The section sets forth an amendment to sections 362 and 546 of the Bankruptcy Code to confirm that certain actions taken during bankruptcy proceedings pursuant to the Uniform Commercial Code to maintain a secured creditor's position as it was at the commencement of the case do not violate the automatic stay. *Such actions could include the filing of a continuation statement and the filing of a financing statement.* The steps taken by a secured creditor to ensure continued perfection merely maintain the status quo and do not improve the position of the secured creditor.

H.R. Rep. 103–835, at 45 (1994) (emphasis added); *see also In re 201 Forest St., LLC*, 422 B.R. 888, 894 n.7 (B.A.P. 1st Cir. 2010).

Plainly, the retention of possession is not the same thing as the filing of a continuation statement or the filing of a financing statement. The filing of those statements constitutes a single, definite, and positive act that continues or maintains the perfection of an interest in

property. That Congress was concerned with financing and continuation statements is also

supported by the fact that, prior to the amendment in 1994, the Uniform Commercial Code (not

considering the state-specific enacted versions of that code) contained a section expressly tolling

the lapse of a financing statement after a bankruptcy petition had been filed. *See* U.C.C. § 9–515

cmt. 4. Following the 1994 amendment to the Bankruptcy Code, however, the tolling provision

in the non-state specific Uniform Commercial Code was removed. *Id.*; *see also In re Miller Bros.*

*Lumber Co., Inc.*, No. 1:12CV720, 2013 WL 5755052, at *7 (M.D.N.C. Oct. 23, 2013)

(discussing the North Carolina U.C.C.).[27] The legislative history contains no reference to

possessory liens, nor is there any indication that Congress intended creditors with possessory

liens to be placed in a superior position to that of any other secured creditor. Hence, the

legislative history supports the court's interpretation of section 362(b)(3).

    iv.    ***Thompson***

      Nothing in *Thompson* requires a different result. The same words appearing in a statute,

especially when the words are close together, are presumed to carry the same meaning. *Desert*

*Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003); *Comm'r v. Lundy*, 516 U.S. 235, 250 (1996);

*Arreola-Castillo v. United States*, 889 F.3d 378, 386 (7th Cir. 2018); *State Farm Mut. Auto. Ins.*

*Co. v. Comm'r*, 698 F.3d 357, 370 (7th Cir. 2012). And *Thompson* interpreted the term "act" in

section 362(a)(3) to cover the passive retention of property, at least impliedly. *Thompson*, 566

F.3d at 703. In *Thompson*, however, the Seventh Circuit was not just interpreting the term "act,"

it was interpreting the entire phrase "act . . . to exercise control." *Id.* What might constitute an

---

[27] The fact that that provision in the Uniform Commercial Code was removed does not directly bear on Congress's intent in passing the 1994 amendment to section 362(b)(3), but it is some evidence of the relationship of the two provisions as that relationship might have been known and understood by Congress at the time of the amendment to section 362(b)(3).

"act . . . to exercise control" is not necessarily the same as an "act . . . to maintain or continue the perfection of an interest in property." *Compare* 11 U.S.C. § 362(a)(3), *with* 11 U.S.C. § 362(b)(3); *see also Thompson*, 566 F.3d at 702 (focusing on the plain meaning of the phrase "exercising control").

Moreover, the rule that like terms are presumed to have the same meaning is not a rigid one. *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2441 (2014); *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007). It "readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent," even where the terms appear "in the same section." *See Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932).

Here, the statutory scheme of which section 362(b)(3) is a part, including section 546(b), counsels that the phrase "act . . . to continue or maintain the perfection of an interest in property" plainly means a definite, distinct, and positive act to continue or maintain the perfection of an interest in property. Section 362(a)(3), the section that the court in *Thompson* was interpreting, does not reference section 546(b) at all, nor does it contain the separate language referencing acts accomplished within definite time periods, as section 362(b)(3) does in reference to section 547(e)(2)(A).

Moreover, when applying the appropriate canons of construction, it is natural to give the term "act" its broadest meaning when construing the expansively-interpreted language in section 362(a)(3), and then to give the term "act" its narrower meaning given the narrow construction properly to be given to section 362(b)(3) in light of that section's negative impact on the automatic stay's purposes (1) to give the debtor a breathing spell and (2) to facilitate a successful reorganization. *See Grede Foundries*, 651 F.3d at 790; *Stringer*, 847 F.2d at 552.

29

Thus, the court concludes that the phrase "act . . . to continue or maintain the perfection of" in section 362(b)(3) requires a positive, distinct action, such as filing a continuation statement under the U.C.C., and therefore that a passive retention of estate property is not an "act . . . to maintain or continue the perfection of an interest in property." The City's continued retention of the Debtor's vehicle therefore does not fall within the exception to the automatic stay under section 362(b)(3).

## IV.    Section 362(b)(4)

The City also argues that its retention of the possession of the Debtor's vehicle is excepted under section 362(b)(4), which provides:

> The filing of a petition . . . does not operate as a stay— (4) . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power . . . .

11 U.S.C. § 362(b)(4).[28]

Here, as seen above from the discussion in Part II, the City's continued retention of possession of the Debtor's vehicle constitutes the enforcement of a judgment obtained in an action or proceeding. The action or proceeding was the administrative adjudication of the Debtor's parking, standing, and/or automated red-light traffic violations, and it may be assumed for the sake of argument that the actual adjudication of those violations resulted from the City's exercise of its police and regulatory power. That administrative adjudication (or those adjudications) resulted in the entering of final determinations of liability, which are the

---

[28] The City has not argued that its conduct is excepted under section 362(b)(1).

administrative equivalent of judgments. Those final determinations of liability were what enabled the City to immobilize and impound the Debtor's car in the first instance.

The City's continued impoundment of the vehicle constitutes one aspect of its enforcement of those final determinations of liability. The only question is whether those final determinations are "money judgments" as that term is used in section 362(b)(4), because the enforcement of money judgments does not fall within the section 362(b)(4) exception, even if that enforcement also constitutes an exercise of the governmental unit's police and regulatory power. *United States v. Colasuonno*, 697 F.3d 164, 179 & n.7 (2d Cir. 2012); *In re Halo Wireless, Inc.*, 684 F.3d 581, 587 (5th Cir. 2012); *S.E.C. v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000); *N.L.R.B. v. P\*I\*E Nationwide, Inc.*, 923 F.2d 506, 512 & n.5 (7th Cir. 1991); *N.L.R.B. v. Cont'l Hagen Corp.*, 932 F.2d 828, 834–35 (9th Cir. 1991); *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 272 (3d Cir. 1984).

In determining whether a judgment is a money judgment, and therefore incapable of enforcement without violating the automatic stay, the relevant inquiry is whether the judgment or order being enforced requires payment. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.05[5][b] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018); *see also In re First All. Mortg. Co.*, 263 B.R. 99, 107 (B.A.P. 9th Cir. 2001); *In re Guardia*, 522 B.R. 734, 735 (Bankr. S.D. Fla. 2014); *In re Jester*, 344 B.R. 331, 337–38 (Bankr. E.D. Pa. 2006), *aff'd*, No. CIV.A. 06-02126, 2007 WL 781900 (E.D. Pa. Mar. 8, 2007). Here, there can be no doubt that the final determinations of liability in this case are judgments or orders requiring payment of a sum certain, namely the amount of the fines, penalties, sanctions, and/or costs imposed by the "administrative law officer's order." *See* 625 ILCS § 5/11-208.3(e); M.C.C. §§ 9–100–100(b), 2–14–103(a); *see also Penn Terra*, 733 F.2d at 275 (noting the significance of the judgment or order being for the

31

payment of a sum certain). There can also be no doubt that the City's continued retention of possession of the Debtor's vehicle constitutes the enforcement of its judgments or orders requiring payment, because the release of the Debtor's vehicle is expressly conditioned on the payment of the amounts liquidated in the final determinations of liability. *See* M.C.C. § 9–92–080(a). Since the City's continued retention of possession of the Debtor's vehicle constitutes the enforcement of a judgment or order requiring payment, its continued retention of possession is not excepted from the operation of the automatic stay by virtue of section 362(b)(4).

<u>**Conclusion**</u>

The City's continued retention of the possession of the Debtor's vehicle is not excepted from the operation of the automatic stay under either section 362(b)(3) or section 362(b)(4). For that reason, the City has violated and is in violation of section 362(a)(3), and therefore the City must release the Debtor's vehicle immediately.[29] A separate order will be issued consistent with this opinion.

Dated: 8/15/2018

Deborah L. Thorne
United States Bankruptcy Judge

---

[29] The Debtor has asked neither for sanctions under section 105 nor for damages under section 362(k).